IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PHILLIP J. GAINES, AIS # 268485, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 2:19-CV-538-WKW-CSC |
| ALABAMA DEPARTMENT OF CORRECTIONS, et. al., | ) |
| Defendants. | ) |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Phillip J. Gaines, who is currently incarcerated at the Donaldson Correctional Facility, in Bessemer, Alabama, has filed pro se this 42 U.S.C. § 1983 action for damages for certain claimed violations of his federally protected rights while confined in the Elmore Correctional Facility ("Elmore"), in Elmore, Alabama. Doc. 1. Plaintiff brings suit against the Alabama Department of Corrections ("ADOC") and Elmore Correctional Officers Chaucey Thomas, Jamal Mitchell, Prince Lewis, James Wilson, and Cody Davenport ("Defendants"). Plaintiff claims Defendants failed to protect Plaintiff and provide him with adequate security when Plaintiff was attacked by another inmate in January 2019. Plaintiff also asserts, after the attack, his pain and suffering worsened because Elmore does not have "a[n] active health care unit." Doc. 1 at 3. For relief, Plaintiff seeks monetary damages.

Defendants filed an answer, special report, and supporting evidentiary materials addressing Plaintiff's claims for relief. Doc. 15. In these filings, Defendants deny they acted in violation of Plaintiff's constitutional rights. *Id*. Upon receipt of Defendants' special report, the Court entered an order which provided Plaintiff an opportunity to file a response to Defendants' report. Doc. 16. This order advised Plaintiff that his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. *Id*. at 2. The order further cautioned Plaintiff that unless "sufficient legal cause" is shown within fifteen days of entry of this order "why such action should not be undertaken,…the court may at any time [after expiration of the time for his filing a response] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment, and (2)

after considering any response as allowed by this order, rule on the dispositive motion in accordance with law." *Id*. at 3. Plaintiff filed a response to Defendants' special report. Doc. 20. This case is now pending on Defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition, the Court concludes that Defendants' motion for summary judgment (Doc. 15) is due to be **GRANTED**.

## I.     Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322-324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc*., 64 F.3d 590, 593-594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This Court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to

return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Plaintiff has failed to establish that there is a genuine issue as to a material fact to preclude summary judgment.

## II.    Factual Background

By way of overview, Plaintiff asserts Defendants violated his constitutional rights when they failed to protect Plaintiff from an attack by another inmate and for failing to provide timely and effective medical treatment. *See* Doc. 1.

Plaintiff's claims stem from the following facts, viewed in the light most favorable to Plaintiff:

In January 2019, Plaintiff was assaulted by another inmate while in the dining room in Elmore. Doc. 15-7. According to the incident report detailing the assault:

> On January 10, 2019, Correctional Officer Jeremaine Love was assigned as dining room security. At approximately 11:30 am, Officer Love observed [Plaintiff] bleeding from the right side of his face. [Plaintiff] was immediately transported to Staton Correctional facility's Health Care Unit for a medical assessment. Correctional Officer Bruce LaFogg observed the commotion in between the drink station and the inmate seating area. Officer LaFogg observed inmate Donald Boykin…with his walking cane falling back, as if he was involved in an altercation. Officer LaFogg observed inmate Boykin get another tray and sit at a different table. Based on these factors, inmate Boykin was positively identified as a suspect. Correctional Officer Renard Smith searched the table area where inmate Boykin was sitting and found a small prison made knife, approximately 4" long with a plastic handle, with a ½" razor blade on the end, that was tucked under the edge of the table. At approximately 11:48 am, Correctional Sergeant Ulysses Oliver was notified by Staton CF's HCU, that [Plaintiff] needed to be transport[ed] (via ambulance) to Jackson Hospital Emergency Room. [Defendants Thomas and Davenport] provided transport security. At approximately 11:53 am, Correctional Lieutenant Willie Burks III reported the incident to Correctional Warden III Joseph H. Headley and Correctional Captain Charmelle Luckie. At approximately 12:14 pm, Sergeant Oliver reported the incident to I&I Investigator David Gallew. . . . [Plaintiff] was eventually released from Jackson and returned to Elmore. An enemy validation was completed and inmate Boykin was transferred to Kilby Correctional Facility for placement in RHU. Inmate Boykin is pending disciplinary action for

3

Assault on another inmate. [Plaintiff] will not be charged at this time.

*Id*. According to Plaintiff's January 10, 2019, inmate body chart (medical examination), Plaintiff asserts: "I was eating and got attacked," and shows that Plaintiff suffered lacerations to his hand and neck. Doc. 15-9 at 1. Plaintiff further explained to medical personnel: "I was assaulted while eating. Attacked from behind by another inmate during chow. . . It happened like 45 minutes ago." Doc. 15-12 at 108. Medical personnel noted that Plaintiff was bleeding profusely and that the bleeding was controlled with pressure. *Id*. Pictures were taken of Plaintiff's injuries, which show lacerations to Plaintiff's neck and hand. Doc. 15-10 at 1-4. Plaintiff's medical records indicate, at 11:45 a.m., medical personnel at Staton Correctional Facility recommended that Plaintiff be transferred to Jackson Hospital Emergency Room for treatment. Doc. 15-12 at 78.

Plaintiff's medical records demonstrate, on January 10, Plaintiff received sutures to treat his injuries and medical personnel at Jackson Hospital instructed Plaintiff to use Dial Soap while showering, for ten days. Doc. 15-12 at 77, 82-84. Plaintiff was also prescribed several medications while at Jackson Hospital. Doc. 15-13 at 1-3. Plaintiff's medical records indicate, on January 10, Dr. Boroxicz requested that Plaintiff be permitted to follow-up with medical personnel on January 11, for further evaluation of Plaintiff's sutures. Doc. 15-12 at 48; *see also* Doc. 15-13 at 10. On January 11, Plaintiff's medical records indicate that Plaintiff's sutures were scheduled to be removed in seven days. Doc. 15-12 at 60. That same day, Plaintiff was prescribed Tylenol and Cleocin, an antibiotic. Doc. 15-12 at 73, 76.

On January 16, Plaintiff refused to see the doctor. Doc. 15-12 at 47. On January 17, inmate Boykin pleaded guilty to assaulting Plaintiff with a knife. Doc. 15-11 at 2-3. That same day, while Plaintiff agreed to have some sutures removed, he refused to have the sutures removed from his right ear. Doc. 15-12 at 83.

On January 22, Plaintiff again refused to have his sutures removed. Doc. 15-12 at 82. On January 31, medical personnel noted in Plaintiff's records that Plaintiff did not follow instructions from Jackson Hospital. *Id*.

All individual Defendants testify that they were not present in Elmore's dining hall or kitchen on the date and time Plaintiff was assaulted. *See* Docs. 15-2 at 1; 15-3 at 1; 15-4 at 1; 15-5 at 1; 15-6 at 1.

Additional facts are set forth as necessary.

4

## III.     Discussion

In his complaint, Plaintiff alleges Defendants violated his constitutional rights when, on January 10, 2019, Plaintiff was assaulted by another inmate while in the kitchen at Elmore. Doc. 1. Plaintiff alleges that Defendants failed to provide Plaintiff with adequate security, allowed the assaulting inmate to enter and leave the kitchen with a knife, and failed to provide Plaintiff timely and effective medical treatment. *Id.* Because of this assault, Plaintiff maintains he is now physically scarred and suffers emotional distress. *Id.* Plaintiff requests monetary damages for his pain and suffering. Doc. 1-4 at 1.

Defendants contend, *inter alia*, that Plaintiff's claims lack merit, Defendants did not violate Plaintiff's constitutional rights, and Defendants are entitled to immunity in their official capacities. *See* Doc. 15.

### A.     *Alabama Department of Corrections*

Insofar as Plaintiff brings suit against the ADOC, the Eleventh amendment to the United States Constitution bars plaintiffs from suing the State directly. State agencies share this absolute immunity from suit. *See Alabama v. Pugh,* 438 U.S. 781, 782 (1978) ("There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit."). Because Plaintiff's claims for damages are asserted directly against the ADOC, this defendant must be dismissed with prejudice. *See id.*

### B.     *Sovereign Immunity and Individual Defendants*

To the extent Plaintiff sues individual Defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, Defendants Thomas, Mitchell, Lewis, Wilson, and Davenport are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### C.     *Deliberate Indifference*

#### 1.     *Standard of Review*

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994) (citations and quotation marks omitted). Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Id*. at 828. "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). The Eleventh Circuit, however, has "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety.'" *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (quoting *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)). "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation and quotation marks omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (citation omitted).

6

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). Regarding the objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments'. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (*citing Farmer*, 511 U.S. at 838) (explaining that "[p]roof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also draw that inference. *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (quotation marks omitted). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state

7

official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and quotation marks omitted). "Merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*. Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (citation and quotation marks omitted). In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm, and with this knowledge, consciously disregard the risk. *Farmer*, 511 U.S. at 837.

Consequently, to survive the properly supported motion for summary judgment filed by Defendants, Plaintiff must first demonstrate an objectively substantial risk of serious harm existed to him prior to the inmate attack at issue and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (citation omitted). If he establishes these objective elements, Plaintiff must then satisfy the subjective component. To do so, Plaintiff "must [show] that the defendant[s] subjectively knew that [Plaintiff] faced a substantial risk of serious harm. The defendant[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a **particular threat or fear felt by [Plaintiff]**. *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added). Moreover, the defendant-official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also draw that inference. *Id*. at 1349 (quotations omitted).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (quotation marks omitted) (emphasis in original).

### 2. Failure to Protect or Provide Adequate Security

Plaintiff alleges that on January 10, 2019, Defendants acted with deliberate indifference to his safety regarding an attack on him by another inmate while in Elmore's kitchen. Plaintiff claims that the assault occurred because Defendants were negligent in failing to "stop the conflict" and if

8

Defendants properly performed their security duties, Plaintiff would never have been assaulted. Doc. 1 at 3.

Defendants maintain that they did not violate Plaintiff's constitutional rights and further argue that Plaintiff fails to show that Defendants failed to protect or provide Plaintiff with adequate security. Defendants' evidence includes Defendants' affidavits and other prison records. Defendants testify as follows:

Defendant Thomas testifies: "On January 10, 2019, I was assigned to B-dorm[.] I did not see the incident in question. I was mandated and removed from my post to transport [Plaintiff] to Jackson Hospital for treatment for injuries caused during the incident." Doc. 15-2 at 1.

Defendant Mitchell testifies: "I was not in the chow hall at the time of this incident. However, I was the officer assigned to serve the disciplinary that [Plaintiff] received due to the incident that this complaint is based on." Doc. 15-3 at 1.

Defendant Lewis testifies: "On the day in question I did not work in the kitchen. My assigned post on that day was Bravo 2 Dorm. I have no knowledge of [the] incident. . . ." Doc. 15-4 at 1.

Defendant Wilson testifies: "During the time of the incident… I was not present. On January 10, 2019, I was relieved of my duties as Kitchen Officer due to a doctor appointment at 9:00 a.m. I did not return to Elmore C.F. until 1:41 p.m." Doc. 15-5 at 1.

Defendant Davenport testifies: "On January 10, 2019, I, Cody Davenport was assigned to A1-Dorm[.] I did not see the incident in question. I was removed from my post to transport [Plaintiff] to Jackson Hospital for treatment for injuries caused during the incident." Doc. 15-6 at 1.

Plaintiff does not allege that he complained to any prison official he was in danger of being attacked by any inmate, including inmate Boykin, nor does he challenge Defendants' testimony that they were neither present at the scene of the incident, nor were they aware of any risk to Plaintiff from which they could infer that a substantial risk of harm existed to Plaintiff prior to the January 2019, incident. Instead, the record establishes that the altercation occurred when inmate Boykin, without warning, pulled a knife on Plaintiff, and assaulted Plaintiff in the kitchen. *See* Docs. 15-7 at 1; 15-11 at 1-5.

Simply, there is no evidence any named defendant witnessed the assault or knew of any risk from which they could infer a substantial risk to Plaintiff.

9

Even had Plaintiff satisfied the objective component of his deliberate indifference claim, he fails to establish the subjective component because he has not shown that any Defendant subjectively knew of a risk of harm to him posed by inmate Boykin, or any inmate for that matter. Plaintiff's contention that Defendants violated his constitutional rights when they negligently allowed inmate Boykin to assault Plaintiff is not evidence that any Defendant knew that he faced a substantial risk of harm. *Caldwell,* 78 F.3d at 1099-1100 (explaining a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Further, and without disputing that inmate-on-inmate assaults occur in the correctional system, even assuming the institutional facility was experiencing understaffing or overcrowding at the time of the assault on Plaintiff, such is insufficient to establish Defendants knew a substantial risk of serious harm existed and, with such knowledge, deliberately failed to prevent the harm. *Johnson*, 568 F. App'x at 722 (explaining that complaint properly dismissed for failure to state a claim because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [inmate-attacker]."); *Harrison v. Culliver*, 746 F.3d 1288, 1300 (11th Cir. 2014) (observing that although increasing the number of officers in an area of the facility "may have improved security [at the prison, the warden's] decision not to do so did not create a substantial risk of harm."); *Johnston*, 135 F. App'x at 377 (observing that where allegations simply inferred that prison officials should have known that inmate-attacker posed a threat to others due to past behavior and general verbal threats, defendants were entitled to summary judgment because plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [fellow inmate]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any fear [he] felt."); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (explaining that "because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [his attacker] and failed to take protective measures, his [failure to protect] claim fails."); *Staley v. Owens*, 367 F. App'x 102, 108 (11th Cir. 2010) (explaining that plaintiff failed to demonstrate supervisory liability as the mere fact that isolated inmate assaults may have occurred over several years "is not sufficient to establish that there was a history of widespread abuses that supervisors failed to reasonably respond to.").

The record is devoid of evidence Defendants knew specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff, that Defendants actually drew this inference, and, thereafter, ignored the known risk.  Plaintiff has not presented facts sufficient to create a genuine dispute regarding "actual knowledge" of a substantial risk of harm.  Rather, the evidence indicates that inmate Plaintiff's assault was a sudden, isolated incident.  *See Curry v. Crist*, 226 F.3d 974, 979 (8th Cir. 2000) (affirming summary judgment where a prisoner was injured during a surprise attack by another inmate); *Chatham v. Adcock*, 334 F. App'x 281, 293-94 (11th Cir. 2009) (explaining that plaintiff was entitled to no relief where he failed to identify "any specific 'serious threat' from [his inmate attacker], which he then reported to [the defendants] prior to [the attack]."); *Brown*, 894 F.2d at 1537 (holding that "negligent failure to protect an inmate from attack does not justify liability under § 1983.").  Inmate Boykin's assault on Plaintiff was an unfortunate event.  It does not, however, reflect deliberate indifference by Defendants.  The evidence reflects the events complained of unfolded quickly.  Correctional Officers promptly escorted Plaintiff to medical, investigated inmate Boykin's suspicious behavior after the assault, and reported the incident to Warden III Joseph Headley, Correctional Captain Charmelle Luckie, and I&I Investigator David Gallew.  Doc. 15-7 at 1.

Because Plaintiff has failed to show Defendants actually knew that a substantial risk of serious harm existed, he has failed to satisfy the subjective element of his Eighth Amendment claim as well.  *Carter*, 352 F.3d at 1350.  Since the record fails to demonstrate that the incident between Plaintiff and inmate Boykin occurred due to any deliberate indifference or reckless disregard by Defendants, summary judgment is due to be granted in their favor on Plaintiff's claims of failure to protect or inadequate security.  *See Celotex Corp.*, 477 U.S. at 322.

### 3. *Denial or Delay of Effective Medical Treatment*[1]

Plaintiff also alleges that he was denied medical treatment after the January 2019, assault because Elmore does not have an "active health care unit." Doc. 1 at 3.  Defendants contend, however, after the assault, Plaintiff was immediately taken for a medical examination at Staton Correctional Facility's Health Care Unit in Elmore, Alabama, and then immediately transported to Jackson Hospital for treatment.  Doc. 15 at 5.  Defendants assert, Plaintiff's claims of deliberate indifference to his serious medical needs, are without merit.  *Id*.

---

[1]    The Court adopts and incorporates herein, the deliberate indifference standard set forth *supra* in Section C, Subsection 1.

11

"The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (*citing Estelle*, 429 U.S. at 104). To demonstrate a denial of medical care in violation of the Eighth Amendment, Plaintiff must prove both an objective and subjective component. The objective element requires Plaintiff to demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id*. (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id*. (quotation marks and citation omitted).

The subjective component of Plaintiff's medical claim requires that he demonstrate "deliberate indifference" to a serious medical need. *Farrow*, 320 F.3d at 1243. Deliberate indifference is shown by establishing that a defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk. It may be demonstrated by either actual intent or reckless disregard. *See Farmer*, 511 U.S. at 834. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference." *Id*. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding a defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. As noted above, "[d]eliberate indifference" also entails more than mere negligence. *Estelle*, 429 U.S. at 106; *Farmer*, 511 U.S. at 835.

"Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." *Hill*, 40 F.3d at 1187 (quotation marks and citations omitted). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve

12

life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Id*.

> The seriousness of an inmate's medical needs also may be decided by reference to the *effect* of delay in treatment. Where the delay results in an inmate's suffering a life-long handicap or permanent loss, the medical need is considered serious. An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that [t]he tolerable length of delay in providing medical attention depends on the *nature* of the medical need and the *reason* for the delay. Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Hill*, 40 F.3d at 1188-89 (quotation marks and citations omitted) (footnotes omitted). Further "whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quotation marks and citation omitted); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (holding that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that the mere fact an inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution).

Defendants' evidence includes affidavits from Defendants Thomas and Davenport, ADOC reports as to the January 2019 incident, and Plaintiff's relevant medical records. Docs. 15-2; 15-6; 15-7; 15-8; 15-9; 15-10 at 1-4; 15-12 at 48, 60, 73, 76, 77-78, 82-84; 15-13 at 10.

Assuming Plaintiff's condition presented a serious medical need, which is not in dispute, Plaintiff presents no evidence sufficient to create a genuine issue of disputed fact regarding the claim Defendants acted with deliberate indifference to his medical needs. As to Plaintiff's allegations that Defendants denied or delayed Plaintiff medical treatment because there is no "active health care unit" at Elmore, the record shows that, when correctional officers saw that Plaintiff was injured, he was immediately brought to Staton Correctional Facility's Health Care Unit for evaluation. Then, approximately eighteen minutes after correctional officers first saw Plaintiff bleeding in Elmore, Staton's medical personnel recommended that Plaintiff be transported to Jackson Hospital Emergency Room where he received sutures. *See* Docs. 15-7; 15-9. Plaintiff's

medical records show that, at 12:57 p.m., less than two hours after the assault, Jackson Hospital medical personnel instructed Plaintiff to use Dial Soap for ten days. Doc. 15-12 at 77. Plaintiff's medical records also show that Plaintiff was prescribed several medications while at Jackson Hospital (Doc. 15-13 at 1-3) and that medical personnel directed Plaintiff to receive follow-up treatment the next day. *See* Doc. 15-12 at 48; *see also* Doc. 15-13 at 10. Plaintiff's medical records further show that Plaintiff was prescribed Tylenol and an antibiotic on January 11 (Doc. 15-12 at 73, 76), Plaintiff refused to see the doctor on January 16 (Doc. 15-12 at 47), and Plaintiff refused to have sutures removed on January 22. Doc. 15-12 at 82.

Upon review of Plaintiff's medical records, it is clear that Plaintiff received significant medical care, first at Staton Correctional Facility's Health Care Unit, and then at Jackson Hospital. "Although [Plaintiff] may have desired different modes of treatment, the care [provided by any medical personnel] provided did not amount to deliberate indifference." *Hamm*, 774 F.2d at 1574-75 (citing *Bass v. Sullivan,* 550 F.2d 229, 231-32 (5th Cir.), *cert. denied,* 434 U.S. 864 (1977); *accord, Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (1st Cir.1981) ("Where a prisoner has received ... medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law.")).

Insofar as Plaintiff alleges Defendants withheld treatment, Plaintiff's evidence does not create a genuine issue of material fact as to this claim. Indeed, as noted above, Plaintiff was immediately taken to Staton Correctional Facility for examination, quickly transported to Jackson Hospital for sutures, and after receiving sutures, received follow-up treatment. In other words, the undisputed evidence reflects Plaintiff received timely and appropriate access to medical providers both immediately after the assault and in his follow-up care.

The record demonstrates correctional officers and medical personnel responded to Plaintiff's injuries and provided medical care consistent with his injuries. Their responses to Plaintiff's injuries, as argued by Defendants and uncontroverted by Plaintiff, were reasonable and appropriate. Defendants' arguments regarding the provision of medical care afforded Plaintiff is corroborated by the contemporaneously compiled objective medical records. The law is settled that "[s]elf serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records," and they do not do so here. *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d

14

1530 (11th Cir. 1990)). While the record clearly shows Plaintiff required significant medical care after the assault at Elmore, Plaintiff presents no evidence showing the way any named Defendant—or any medical personnel—addressed his medical concerns or condition created a substantial risk to his health that the attending health care personnel consciously disregarded. The record is therefore devoid of evidence—significantly probative or otherwise—showing that Defendants acted with deliberate indifference to a serious medical need experienced by Plaintiff. *Farmer*, 511 U.S. 825; *Quinones,* 145 F.3d at 168. Accordingly, Defendants are due to be granted summary judgment on Plaintiff's claims of being denied effective medical treatment.

### D. *Supplemental Jurisdiction*

To the extent Plaintiff seeks to bring state law claims, review of such claims is only appropriate upon exercise of this court's supplemental jurisdiction. In the posture of this case, however, exercising such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a common nucleus of operative fact." *L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984) (citations omitted). Exercising supplemental jurisdiction is discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428; *Hicks v. Moore*, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005) (noting that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.") (citation and quotation marks omitted). Because of the Court's resolution of the federal claims in the complaint, Plaintiff's supplemental state law claims are due to be dismissed. *Gibbs*, 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

### IV. Conclusion

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (Doc. 15) be GRANTED;
2. Plaintiff's supplemental state law claims be DISMISSED without prejudice;
3. This case be DISMISSED with prejudice;
4. Judgment be ENTERED in favor of Defendants;

5. No costs be taxed.

It is further

ORDERED that **on or before April 18, 2022,** the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised this Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE on this 4th day of April 2022.

>  /s/  Charles S. Coody
> CHARLES S. COODY
> UNITED STATES MAGISTRATE JUDGE